UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH SYLVESTER, SR           CIVIL ACTON NO.

v

                                                    JUDGE:
EN BISSO & SON, INC           Magistrate Judge:

## COMPLAINT

### Jurisdiction and venue

1. This action is brought under Title VII and the Age Discrimination in Employment Act such that jurisdiction is conferred by 28 USC sec. 1343. Venue in this district is proper because all acts complained of occurred in this district.

### Right-to-sue

2. Plaintiff filed an EEOC charge on September 15, 2015 that specifically alleged racially motivated discharge on September 14, 2015.  It also stated that he was called egregious racial epithets multiple times such that the issue of racial harassment would have been reached.  (Out of caution, plaintiff is filing a second charge specifically claiming racial harassment and retaliation; he will also allege racial wage discrimination.  Upon issuance of a Right-to-sue letter, these will be combined in a new complaint.)  He received a Right-to-sue letter dated September 28, 2015.

### Parties

3. Plaintiff is a 52 y.o. African-American male.  He was employed by defendant, EN Bisso & Sons, Inc (BIsso), since 1989 in various capacities, most recently as a general laborer in the yard and the two buildings at 1 Walnut St, New Orleans, La., at @ $42,000/yr with responsibility for emptying trash cans and cleaning the toilets.  He was demoted from purchasing agent in about 2005 after Katrina and replaced by Timothy Michel (w/m) whom he trained.

3a.   Defendant employs between 201 and 500 people.  Bisso is a tugboat and towing company.

## Count 1-Supervisory and co-employee racial and harassment

## Background

4.   Plaintiff's supervisors who had the authority to fire him and participated in the racial harassment were Matt Holzhalb (COO)(Holzhalb); Mike Vitt (Vice President Operations and General Counsel)(Vitt); Steve Selles (Fleet Operations Manager)(Selles); Timothy Michel (Michel); and Chris Herzog Herzog).

5.   Plaintiff's co-employees who participated in the racial harassment were Brandon Truet (sp ?)(purchasing manager)(Truet); Mike Kilear (sp)(port captain)(Kilear); and Dwayne Brady (port engineer)(Brady).

6.   Before the period sued on, plaintiff was first subjected to racial slurs when he tried to return to the Bisso yard for work in November 2005 after Hurricane Katrina.  On that occasion, Mike Vitt met with some boat captains on the Vera Bisso and ordered them "not to open the gate; don't let that n' in; he ain't gonna do nothing but steal."  This ordered was overridden by Dee White, one of the owners, now deceased.

7.   Afterwards, plaintiff heard steady reports that Vitt was referring to him in racially derogatory terms.

8.   He heard other managers, Bill Sommers and Chris Herzog, refer to him by the n' word.  He heard this about 10 times total.

9.   In addition, he was being told that these managers were referring to him by this term.  He was told this about 20-30 times.

10.  When new management (Bill McDonald, Selles, Kilear, Brady, and Truet) came in about 2013-2014, plaintiff overheard in May Michel, Selles, and Kilear state that they would "never hire a n'.  I do not care what kind of papers he had."  Vitt was present and he replied, "Do what you got to do.  Do not hire them."

## The actionable period

11. Within 300 days of the date of the EEOC charge, plaintiff was referred to by the n' word and other racially derogatory terms within his hearing dozens of times. These other terms included, but were not limited to, "boy", "coon", "watermelon eater", at lunch - "get him chicken, that's all they eat", "this is the South", and "this is the new South."

12. These terms were used in the context of statements that management would never believe a n' and that other managers "could do with him as they pleased.  He (Vitt) would find a way to get rid or you and he would never take a complaint from a 'n.'"  (Vitt, Michel, and Selles per Truet)

13. There were no signs instructing employees in anti-discrimination law nor did plaintiff receive any such training.

14. In December 2014, Russ LNU, a former dispatcher, told plaintiff that "they" were continually complaining, "That n' ain't cleaning up."  He continued to advise plaintiff of this until he left Bisso in about May 2015.  When Russ was about to leave, he identified the complainers as Vitt, Selles, Michel, Kilear, and Brady.

15. In January 2015, a dispatcher, Ronnie Ledet, advised plaintiff that he was getting tired of Michel, Kilear, Selles, Vitt (plaintiff's supervisors), and Brady (a co-employee) saying, "This n' that and this n' that."  Ledet advised plaintiff that management was after him. "  He continued to advise plaintiff of this until plaintiff was terminated.

16. About March 2015, he overheard Selles say that he was going to put his finger prints on a glass table because that "n" ain't cleaning the table like I want and we gonna get rid of him."

17. In May 2015, plaintiff had been making a salad for himself in the galley and overheard Truet tell about five co-employees, including Kilear and Brady, that Michel had told him, "That n's getting old and they were looking for a younger man to replace that n'."

18. Truet continued to say that he would "get that job whatever it takes. That's why me, Timmy [Michel], and Dwayne [Brady] go to Bourbon St and talk

about getting rid of Joe."

19. Plaintiff overheard in June 2105 as he was coming out of the galley, Selles say, "If you can't handle that n', we can. He goes to the owner." Present were Kilear, Michel, and Herzog.

20. Another context, beginning in June 2015 was "This is the South - do not worry about them." "This is the New South - we're gonna run it the way we want." (Vitt, Michel, and Selles per Truet).

21. Thereafter, plaintiff heard Kilear and Selles say things similar to the phrases in para. 12 dozens of times and laugh about it. About 40-50% of the time Vitt was present, but smiled and said nothing.

22. Thereafter, plaintiff heard Brady say things similar to the phrases in para. 15 dozens of times and laugh about it. About 40-50% of the time Vitt was present, but smiled and said nothing.

23. After the first "New South" remark, plaintiff complained to Holzhalb and Michel in about June 2015 that he did not like the way he was treated because of the color of his skin. He got no relief and the attitude of Holzhalb, Michel, and Vitt changed for the worse toward him and remained such until he was terminated.

24. Beginning about this time, plaintiff noticed that if he walked in on a conversation involving Vitt, Selles, Michel, Kilear, and/or Brady, they would all go silent. This happened about 10-20 times in the back and dispatcher offices. Vitt was present in about ½ of them.

25. Shortly afterwards in June 2015 Truet told plaintiff while they were in a shed, "You been here all these years and everybody gets to be your boss. You can't tell nobody shit. A black man will never be over a white man at EN Bisso...management put us here to get rid of your black ass." He went on to make the remarks attributed to Vitt in para. 15.

26. In August 2015, plaintiff popped in from the galley on one of the above conversations. When he did so, Michel asked, "Where he'd come from?

27. The time of day was about the middle of the Jerry Springer show.

28. Before popping in he had heard complaints that the "n' ain't doing this; we're tired of this; that n' just stealing, etc." He listened for about 15 minutes, and most all of the conversation was about him and heard the n' word about 5-10 times. Vitt said nothing. Two or three minutes into the conversation, Vitt had asked, "Where's he at?"

29. Over Labor Day, September 2015, plaintiff was suspended from August 28 to September 8 when he returned to work. The stated reason for the suspension was that on the report of Truet plaintiff and another black employee had tried to kill each other in an incident involving a bucket.

30. "Flicker" Holmes, another dispatcher, reported that Truet had come into Michel's office and said, "Rewind the camera; look at the video. Them two n's trying to kill each other."

31. Plaintiff alleges that the above course of conduct constituted pervasive and severe supervisory racial harassment and pervasive and severe co-employee racial harassment.

## Count 2 - Racially discriminatory discharge

32. On his last day of work, September 14, 2015, Michel and Truet advised him that Vitt wanted him in the office. They remarked, "N', we finally got you."

33. When he entered the office, Vitt and Holzhalb were present. Holzalb told him that his "services were no longer needed." They found that he had made false accusations that another employee (b/m) had bought a gun to shoot the white employees and caused the yard to be shut down.

34. Vitt warned him not to go to the owners - "We already told them on you, n'."

35. Plaintiff was on his cell phone to his wife and left the phone open such that she heard both of the above conversations.

36. He was replaced by Brandon Truet, a younger white male.

### Count 3- Illegal discrimination because of age

37. Plaintiff alleges alternatively and/or additionally that his discharge was for age-related reasons.  (See para. 17.)

### Allegation of pretext

38. Plaintiff alleges that the termination was a pretext in that (1) he never made a report about an employee having a gun or wanting to shoot the white employees and (2) the yard was never shut down.

### Relief sought

39. Plaintiff seeks all legal and equitable relief, including, but not limited to back wages, front pay, damages for emotional distress, punitive damages, attorney fees, costs, and trial by jury.

Respectfully submitted,
/s/ J Courtney Wilson
J Courtney Wilson 13561
1510 Veterans Blvd
Metairie, La 70005
(T) 832-0584
(F) 846-2400
E/m cwilson@courtlaw.net

PLEASE DO NOT ISSUE SUMMONS